**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **FACTORY SALES AND ENGINEERING, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-6300** |
| **CHUBB EUROPEAN GROUP, LTD, ET AL.** | **SECTION: "B"** |

## OPINION

Before the Court is Appellant Factory Sales and Engineering, Inc.'s appeal from a decision of the United States Bankruptcy Court for the Eastern District of Louisiana (Rec. Doc. 1, 4). Appellees ACE European Group, Ltd., Westchester Fire Insurance Co., and Chubb European Group, Ltd. filed a response brief (Rec. Doc. 6). Appellant filed a reply brief (Rec. Doc. 10).

Appellant, Factory Sales and Engineering ("FSE"), has submitted the following Statement of Issues on Appeal from the Judgment of the Bankruptcy Court entered on June 14, 2018 (Rec. Doc. 4):

1. Whether, under the principles of New York contract interpretation law, the Agreement of Indemnity ("Executed Indemnity") governing the relationship between the Appellees (the "Sureties") and Factory Sales and Engineering, Inc. ("FSE") is ambiguous regarding whether collateral provided to the Sureties for a specific bond must be released to FSE when that bond is released.

1

2. If the Executed Indemnity is ambiguous, whether, under New York law, it should be construed against the Sureties as its drafters.

3. If the Executed Indemnity is ambiguous, whether, in light of other related instruments and the New York law doctrine of *expressio unius est exclusio alterius* ("the expression of one thing means the exclusion of other things"), the omission of explicit language providing for cross-collateralization in the Executed Indemnity should be deemed intentional.

4. If the Executed Indemnity is ambiguous, whether the weight of the other extrinsic evidence supports interpreting it to require the Sureties to release collateral provided by FSE for a specific bond to FSE when that bond is released.

5. Whether the Sureties are obligated under New York law to return the disputed deposits to FSE.

For the reasons discussed below,

**IT IS ORDERED** that the opinion of the Bankruptcy Court is **AFFIRMED,** dismissing the instant appeal at appellant's costs.

Factory Sales and Engineering, Inc. (FSE) was in the business of designing, manufacturing and installing large pieces of industrial equipment for various clients around the world. *See* Rec. Doc. 2-5. Sometime in 2012, FSE was in contact with an insurance broker, Marsh, Inc. (Marsh). *See* Rec. Doc. 2-5 at 70.

2

Because some of FSE's customers required FSE to provide surety bonds, FSE was put in contact with ACE European Group, Ltd., Westchester Fire Insurance Co., and Chubb European Group, Ltd. ("the Sureties". *See id*. In September 2012, the Sureties began issuing bonds for FSE. *See id*. To protect themselves against the risk of loss on the bonds, the Sureties required that FSE sign the Indemnity Agreement. *Id*. Under the Indemnity Agreement, FSE was required to deposit cash collateral with the Sureties. *Id*. at 71.

On May 9, 2017, FSE filed a petition in state court seeking the return of $2.35 million in collateral held by the Sureties. *See* Rec. Doc. 2-5. On June 6, 2017, an involuntary Chapter 7 petition was filed against FSE by several of its creditors. *Id*. The Sureties removed the case to federal court. *Id*. at 62. On July 17, 2017, the case was converted to a Chapter 11 reorganization. *See* Rec. Doc. 2-5. After hearing testimony and reviewing the evidence, the Bankruptcy Court found that the Sureties were entitled to keep the $2.35 million in collateral and apply it to any outstanding claims on projects that were not completed by FSE. *Id*. at 184-85. Specifically, the Bankruptcy Court held that the language was not ambiguous and that it called for a cross-collateralization of bonds. *Id.* The Bankruptcy Court further found that even if the language of the contract was ambiguous, the extrinsic evidence supported the result that the Sureties were entitled to hold onto the collateral at issue. *Id*. at 184-99.

On June 26, 2018, FSE filed a notice of appeal. *See* Rec. Doc. 1.

Appellant argues that this Court should reverse the ruling of the Bankruptcy Court because the executed indemnity agreement at issue does not provide for cross-collateralization among separate bonds. *See* Rec. Doc. 4 at 6. Specifically, Appellant argues that the collateral is bond-specific. *Id*. According to Appellant, the language in the executed indemnity agreement is ambiguous as a matter of New York law. *Id*. at 7. Therefore, Appellant urges this court to construe the agreement against the Appellees and render judgment in favor of Appellant. *Id*.

Appellees argue that the ruling of the Bankruptcy Court should be upheld because the collateral is cross-collateralized across multiple bonds issues in other projects that Appellant has worked on. *See* Rec. Doc. 6 at 9-10. Specifically, Appellees argue that they are entitled to keep the funds and use those funds to pay off any outstanding claims for projects that Appellant has not completed. *Id*. at 7, 12.

The Fifth Circuit has consistently held that the standard of review applicable to bankruptcy appeals in a district court is the same as the standard applied by a Court of Appeals to a district court proceeding. *In re Killebrew*, 888 F.2d 1516, 1519 (5th Cir. 1989). Factual findings of the Bankruptcy Court are reviewed for clear error, F<small>ED</small>. R. B<small>ANKR</small>. P. 8013, and the appellant has the burden

of demonstrating that the bankruptcy court's findings are clearly erroneous. *In re Drehsen*, 190 B.R. 441, 442 (M.D. Fla. 1995). Conclusions of law, and mixed conclusions of law and fact are reviewed *de novo*. *In re Nation Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000).

"Interpretation of a contract is a legal question reviewed de novo." *Hoffman v. L & M Arts*, 838 F.3d 568, 581 (5th Cir. 2016); *Field Motor Sports, Inc. v. Traxxas*, L.P., 861 F.3d 591, 597 (5th Cir. 2017); *In re Killebrew*, 888 F.2d 1516, 1519 (5th Cir. 1989); *accord JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009) (finding that the court must review de novo whether a contract is ambiguous as it is a question of law). However, when the court uses extrinsic evidence, "the meaning of the ambiguous contract is a question of fact for the factfinder." *Field Motor Sports*, Inc., 861 F.3d at 598 (quoting *JA Apparel Corp.*, 568 F.3d at 397).

Due to the choice of law provision in the contract, the contract is governed by New York law. Under New York law, to determine the terms of a contract, a court must look to the parties' intent based on the language they used in the contract. *See Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir. 1993) (citing *Slatt v. Slatt*, 477 N.E.2d 1099 (N.Y. 1985)). Thus, "words of a contract must be given a fair and reasonable meaning in accordance with the parties' intent." *Sutton v. E. River Sav. Bank*, 55 N.Y.2d 550, 555 (1982) (internal

5

quotation marks omitted). In determining the parties' intentions, the court may look to the four corners of the agreement and enforce the contract according to those terms in which the parties agreed upon. *See New York State Workers' Compensation Bd. v. Murray Bresky Consultants, Ltd.*, 155 A.D.3d 1408, 1410 (N.Y. App. Div. 2017); *see also In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 122 (2d Cir. 2014) (stating that agreements are to be construed in accordance with the parties' intent); *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 180 (2d Cir. 2010) (holding that the best evidence of parties' intentions is the contract itself).

A court must be able to determine if a contract is unambiguous on its face. *See Medtech Prods. v. Ranir, LLC*, 596 F. Supp. 2d 778, 808 (S.D. N.Y. 2008). An unambiguous contract is one which has a "definite and precise meaning." *Id.* A contract will be unambiguous when there is no reasonable basis for a difference of opinion. *Id.* According to the court in *Medtech Prods.*, even if the parties argue or present different interpretations in the litigation, the contract is not ambiguous. *Id.* (citing *Metro Life Ins. Co. v. RJR Nabisco Inc.*, 906 F.2d 884, 889 (2d Cir. 1990)).

On the other hand, a contract is ambiguous if it is subjected to more than one reasonable interpretation. *Medtech Prods.*, 596 F. Supp. 2d at 808. "Ambiguity in a contract is the inadequacy of the wording to classify or characterize something that has potential

6

significance." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 178 (2d Cir. 2004). New York courts have repeatedly held that a contract is ambiguous when the terms of the contract could suggest more than one meaning when viewed objectively. *See e.g. Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010); *Chapman v. N.Y. St. Div. of Youth*, 546 F.3d 230, 236 (2d Cir. 2008); *World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 184 (2d Cir. 2003). In analyzing whether the contract was viewed objectively, courts look to whether the contract was looked at by a "reasonably intelligent person" who would thus have knowledge of the practices and words used in that particular business. *See Chapman*, 546 F.3d at 236.

If a court finds that a contract is ambiguous, then and only then, must a court consider extrinsic evidence. *See id.; see also Gerritsen v. Glob. Trading, Inc.*, 2008 U.S. Dist. LEXIS 124482 *24 (E.D. N.Y. Nov. 18, 2008). As noted in *Chapman*, a court must consider whether a contract is ambiguous by first looking at the contract itself without the use of extrinsic evidence. *Chapman*, 546 F.3d at 236. If the contract is ambiguous, then extrinsic evidence[1] must be used by the court in order to determine the true

---

[1] Extrinsic evidence is all evidence that relates indirectly to a matter, such as evidence of the meaning of a writing other than the writing itself. *See* STEPHEN MICHAEL SHEPPARD, *Extrinsic Evidence*, *in* THE WOLTERS KLUWER BOUVIER LAW DICTIONARY DESK EDITION (2012), *available at* LexisNexis.

7

meaning of the contract and the parties' intent. However, extrinsic evidence may not be used to reform or remake a contract. *See Acranom Masonry, Inc. v. Wenger Constr. Co.*, 2017 U.S. Dist. LEXIS 161248 *32 (E.D. N.Y. Sept. 29, 2017) ("[E]xtrinsic evidence cannot be introduced to alter or add a provision to a written agreement."). In *Acranom Masonry, Inc.*, the court explained that extrinsic evidence should be limited to resolving the specific ambiguity in the contract. A court should not use such extrinsic evidence to create an entirely new contract between the parties by adding or deleting terms of the written contract at issue. *Id*.

While the court in *Acranom Masonry, Inc*. found the contract to be ambiguous, the court, nevertheless, held that the defendant's extrinsic evidence was not enough to cure the ambiguities. *Id.* at *39. According to the court, the defendant's extrinsic evidence did not address any of the ambiguities recognized by the court and the defendant only sought to use the evidence to "fill a gap" in the contract. *Id.* at *33-34. The court further stated that while the Second Circuit has stated that extrinsic evidence may be used to resolve an ambiguity when there is an omission of a material fact, the New York Court of Appeals has rejected this exception and found that such omission does not, of itself, create an ambiguity. *Id.* at *34-35. *See, e.g., Nissho Iwai Eur. v. Korea First Bank*, 782 N.E.2d 55, 60 (N.Y. 2002); *Reiss v. Fin Performance*

8

*Corp.*, 764 N.E.2d 958, 961 (N.Y. 2001); *Trustees of Freeholders & Commonality v. Jessup*, 65 N.E. 949, 951 (N.Y. 1903).

A. <u>The contract is not ambiguous and grants the Sureties the right to hold the collateral security</u>

The Court agrees with the Bankruptcy Court's finding that the Indemnity Agreement is not ambiguous. The parties' disagreement turns on the meaning of the phrase "any Bond" in the Executed Indemnity. The relevant provision at issue states:

> 1. PREMIUMS & COLLATERAL FOR SURETYSHIP- The **INDEMNITORS shall pay** or cause to be paid to the **SURETY** both the **agreed premium and**, upon written request by the SURETY at any time, **collateral security** for its suretyship **until** the INDEMNITOR shall furnish to the SURETY competent written evidence, satisfactory to the SURETY, of the **termination of any past, present and future liability under any** Bond. The INDEMNITOR . . . further consents that the collateral security provided in consideration of suretyship may be held by the SURETY in any investment or depository that the SURETY in its sole discretion deems advisable and prudent. The **Surety's election not to demand collateral at** the **inception** of the suretyship obligation **shall not operate as a waiver of the right to demand and receive such collateral at any time before liability has terminated under any** Bond. (Emphasis added).

Rec. Doc. 2-5 at 18.

Appellant argues that the terms "the agreed premium" and "any Bond" are singular and can be interpreted to be referencing a specific bond. Rec. Doc. 4 at 10. Appellee rejects this argument, stating that the Bankruptcy Court correctly found that the Executed Indemnity plainly states that the collateral security lasts until there is no future liability under <u>any</u> bond, and not until

9

termination of liability under "a" Bond or "the" Bond. Rec. Doc. 6 at 10. The Court is not persuaded that the term "any Bond" is ambiguous or can reasonably by interpreted as referencing a specific bond. The word "any" in the agreement indicates the parties' intent for the bonds to be cross-collateralized and not just bond specific. The agreement clearly states that collateral security for the suretyship is to last until the indemnitor furnishes written evidence of the termination of "past, present, and future liability under any Bond." Rec. Doc. 2-5 at 18. Any reasonable, objective person, especially one in this particular business, can identify that the word "any" suggests more than one potential item and is not used to describe a single, specific item. Appellant's argument that the term "any Bond" is singular is not persuasive, because when the term "any" precedes a noun, it is generally for the specific purpose of making clear that the writer or speaker is <u>not</u> identifying a single, specific instance of the noun. As the bankruptcy judge below noted, the agreement did not state "under **<u>the</u>** Bond" which would indicate a reference to a specific, singular Bond. From the face of the contract, the contract provides that Appellant is to pay Appellees until there is not any further liability on <u>any</u> bond, which would include all bonds – past, present, or future - that Appellees have issued on behalf of Appellant. This interpretation is not only consistent with the terms of the agreement and the purpose of the agreement

(to protect the Sureties in case of a loss from the issuance of bonds), but this interpretation is also consistent with industry practice. According to the testimony of Chris Vahey[2], collateral bonds are held on an account basis or a "total global exposure" unless there is only one bond for an account.[3] *See* Rec. Doc. 2-3 at 149-50, 166-67. Furthermore, just because Appellants argue a different interpretation in the litigation does not make this provision of the contract ambiguous. *See Medtech Prods*., 596 F. Supp. 2d at 808.

Therefore, this Court finds that the terms of the Executed Indemnity agreement are not ambiguous from the face of the contract. Since this Court finds that the contract is not ambiguous, it is not necessary to address Appellant's remaining arguments concerning the use of extrinsic evidence, as extrinsic evidence need only be considered in ambiguous contracts.

---

[2] Chris Vahey has been a surety underwriter for almost 20 years.
[3] Since Vahey is familiar with industry practices, customs, and terms used, the Court finds that his reasonable and objective interpretation is consistent with the terms of the contract. *See Chapman*, 546 F.3d at 236 ("[A]n ambiguity exists where a contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.")

Accordingly, the judgment of the Bankruptcy Court is **AFFIRMED**, dismissing instant appeal at appellant's costs.

New Orleans, Louisiana, this 14th day of March, 2019.

_____
SENIOR UNITED STATES DISTRICT JUDGE